IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

MONTORIO C. HINES,                                )
                                                   )
                        Plaintiff,                 )
                                                   )
vs.                                                )
                                                   )        Case No. 14-cv-529-MJR-SCW
ILLINOIS DEPARTMENT OF                             )
CORRECTIONS, S.A. GODINEZ,                         )
RICK SUTTON, TERRI BRYANT, CFSS                    )
HARRIS, CFSS SNYDER, and CFSS                      )
REIMAN,                                            )
                                                   )
                        Defendants.                )

## MEMORANDUM AND ORDER

**REAGAN, Chief District Judge:**

### INTRODUCTION

*Pro se* Plaintiff Montorio Hines is currently an inmate at Hill Correctional Center ("Hill"). Hines, a Muslim, claims that his rights have been violated because Defendants refused to provide him a Halal diet that includes Halal meat. When he requested a dietary accommodation, rather than receiving a diet with Halal meat, Hines was provided with a diet known as the lacto-ovo diet, which, among other things, substitutes soy-based proteins for meat. Hines brought suit for alleged violations of his free exercise and establishment rights under the First Amendment, his right to be free from cruel and unusual punishment under the Eighth Amendment, his right to equal protection under the law pursuant to the Fourteenth Amendment, and his rights as set forth under the

Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. §§ 2000cc *et seq.* Defendants filed a motion for summary judgment (Doc. 42) to which Plaintiff filed a response (Doc. 55). Defendants' summary judgment motion is currently before the Court, and for the reasons set forth below, the Defendants' motion (Doc. 42) is **GRANTED in part and DENIED in part**.

## BACKGROUND

Hines is currently incarcerated at Hill Correctional Center. (Doc. 43-1, p. 6). From January 2009 to June 2014, he was incarcerated at Pinckneyville Correctional Center ("Pinckneyville"). (*Id.* at 14–15). Hines is a Muslim and, pursuant to his religious beliefs, is required to eat a Halal diet that is consistent with the Qur'an. (*Id.* at 17-18). According to him, that means he cannot eat pork, and, if he eats other meat, it must have a certain prayer or invocation pronounced over it. (*Id.* at 18-19). Defendants claim that Hines is not required to eat meat, but Hines, citing to religious verses attached to his response, disputes that claim and maintains that he is required by his faith to eat meat. (Doc. 55, p. 6). At his deposition, however, Hines testified that he was unsure whether he was required to eat meat at all. (Doc. 43-1, p. 21). He initially testified that he "would not necessarily say one [who practices Islam] is required to eat meat," but later he said that he did not know whether the Qur'an required him to eat meat. (*Id.* at 20-21).

The parties agree that an incarcerated person is permitted to abstain from any foods, the consumption of which would violate their required religious tenants. (Doc. 43, p. 3; Doc. 55, p. 4). Defendants claim, and Plaintiff does not dispute, that while he was

incarcerated at Pinckneyville, Hines requested to be placed on the lacto-ovo diet for religious reasons. (Doc. 43, p. 3; Doc. 55, p. 4; Doc. 43-1, p. 27–29). The lacto-ovo diet is a meatless diet, characterized as vegetarian by Hines. (Doc. 43-1, p. 23). He believes it differs in some respects from the diet option offered by IDOC that is specifically designated "vegetarian." (*Id.* at 46). According to Defendant Terri Bryant, Food Services Manager at Pinckneyville, the lacto-ovo diet consists of all of the items on the general population food menu, except that all meat and meat by-products are replaced with soy products. (Doc. 43-3, p. 1). Ms. Bryant also asserts that the lacto-ovo diet is approved for Muslim inmates. (*Id.*). Hines, however, argues that while the lacto-ovo diet is "approved for Muslims by the Courts and enforced by the Department of Corrections in Illinois... it is not derived from nor has its origins in the rulings of Islam." (Doc. 55, p. 4-5).

Though Bryant did not indicate what the specific food items on the lacto-ovo diet consist of, Plaintiff testified as to the menu:

> Well, the lacto-ovo diet, you can eat cheese, you can, you can have milk.  You know, rice, beans, you know, the salad.  You know, peanut butter, jelly.   You know, you still can get the eggs.   You get cheese.
> You know, we still was able to get basically those items that the general population was allow to have other than basically the meat, so to substitute the meat, of course, which is, you know, the lacto-ovo is a vegetarian diet.
> And so as a substitution for the meat was like the vegan pattie.

(Doc. 43-1, p. 23). Plaintiff testified that he was placed on the lacto-ovo diet after completing a religious dietary request. (*Id.* at 27–28). An IDOC memo shows that Hines applied for a lacto-ovo diet on the basis of his religious beliefs as a Muslim inmate on

February 23, 2011. (Doc. 43-2). As part of the application process, he was interviewed by the Defendant Bryant and Defendant Sutton, the chaplain. (43-1, p. 27-28). He was approved for the diet on February 26, 2011, and was scheduled to start the diet on March 1, 2011. (Doc. 43-2).

While at Pinckneyville, Hines could purchase certain Halal meat at the commissary, though there were relatively few Halal items compared to non-Halal items. (Doc. 55, p. 5; Doc. 43-1, p. 30). He testified that he could not always afford to supplement his lacto-ovo diet with Halal items from the commissary. (Doc. 43-1, p. 51). In June 2014, Plaintiff was transferred from Pinckneyville to Hill Correctional Center. (Doc. 43-1, p. 6). Regarding the Hill commissary, Hines testified that he did not know if there were any Halal food items available for purchase at Hill; however, he stated in his response to Defendants' summary judgment motion that there are no Halal items at the Hill commissary. (Doc. 55, p. 7; Doc. 43-1, p. 30).

Since being transferred to Hill, Hines is no longer on the lacto-ovo diet. (Doc. 43-1, p. 22). He claims that he stopped eating the diet due to his health deteriorating because of the amount of soy in the diet. (*Id.* at 50). According to Hines, the lacto-ovo diet caused him to go to the healthcare unit two or three times with stomach pain. (*Id.* at 24, 52). He also claims he lost fifteen to twenty pounds during the same time period. (*Id.* at 24). Attached to his response, Hines included several pages of medical records which he claims demonstrate that the lacto-ovo diet caused him "serious abdominal complications," and weight loss. (Doc. 55-1, p. 1 – 12; Doc. 55, p. 6). According to the

IDOC Food Service Administrator, Suzann Bailey, however, the regular diet food tray is designed to provide roughly 2300–2500 calories and at least eight ounces of protein to inmates daily, and the lacto-ovo diet is designed to provide "similar caloric intake as the regular diet tray." (Doc. 43-4). Hines, however, does not challenge the general nutritional adequacy of the lacto-ovo diet; rather, he argues that the diet is inadequate specifically for him, as evidenced by his weight loss and "abdominal complications." (Doc. 55, p. 6).

Hines first grieved the lack of a Halal diet consistent with his religious beliefs on October 30, 2011. (Doc. 1, p. 20–23). He grieved the lack of Halal meat and claimed that the diet was not nutritionally adequate. (*Id.*). His grievance was denied on November 10, 2011. (*Id.* at 20). There is no indication from the grievance that any of the Defendants were personally aware of it. Hines filed another grievance on February 6, 2013, raising numerous issues relating to his diet. (*Id.* at 40). In the grievance, Hines claimed that his diet was inadequate because he had lost 12 to 15 pounds and had gotten sick from the soy in the diet. (*Id.* at 40–41). He claimed he had resorted to eating non-Halal food as a result of these issues. (*Id.* at 41). As part of his relief, Plaintiff sought to be placed on a soy-free diet that was Halal. (*Id.* at 40). On February 17, 2013, Plaintiff grieved the inadequacy of his brunch meal at Pinckneyville. (*Id.* at 42–43). He claimed various food items that he could have eaten were "embargoed" and kept from Muslim inmates and that, as a result, his diet was inadequate, causing him either to lose weight or to have to violate his faith by eating non-Halal food to sustain his health. (*Id.* at 42–43).

On August 13, 2013, a grievance officer responded to both the February 2 and

February 17 grievances and noted that, in addition to financial compensation, Hines sought a soy-free Halal diet. (*Id.* at 44). The report included a summary of a response from Defendant Bryant. (*Id.*). She indicated that there was no "embargo" of food and that she spoke to the inmate diet cooks to remind them to place all menu items on the food trays. Bryant said that if Hines had future issues with not receiving his food, he should notify the on-duty CFSS immediately. She also indicated that brunch menus for religious diet participants mirror the general menu with substitutions made only for meat products. Bryant did not squarely address Plaintiff's complaints of nutritional inadequacy. (*Id.*). She also did not address Plaintiff's request for a Halal diet. (*Id.*). It is also indicated as part of the response that Defendant Bryant spoke with Defendant Reiman as a result of the issues raised in Plaintiff's grievances. (*Id.*). Ultimately, Plaintiff's grievances were denied. (*Id.*).

Plaintiff filed the present suit on May 9, 2014, naming as defendants the Illinois Department of Corrections, its director, S.A. Godinez, and officials and staff members from Pinckneyville: Rick Sutton (chaplain), Terri Bryant (Dietary Supervisor), CFSS Harris (Dietary Staff), CFSS Snyder (Dietary Staff), and CFSS Reiman (Dietary Staff). On July 8, 2014, the Court issued a merits review order pursuant to 28 U.S.C. § 1915A. (Doc. 9). In its order, the Court found that only certain claims of Count One survived: specifically, Hines's RLUIPA claim against Defendants in their official capacities only, Hines's First and Fourteenth Amendment claims, and his Eighth Amendment claims

regarding weight loss and health problems only. (*Id.* at 9). [1] On May 20, 2016, the Defendants filed the present motion for summary judgment (Doc. 42), and Plaintiff filed a Response (Doc. 55). The motion is now ripe and ready for disposition.

### SUMMARY JUDGMENT STANDARD

Rule 56 of the Federal Rules of Civil Procedure governs summary judgment motions. Summary judgment is "appropriate if the admissible evidence considered as a whole shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Dynegy Mktg. & Trade v. Multi Corp.*, **648 F.3d 506, 517 (7th Cir. 2011) (citing FED. R. CIV. P. 56(a));** *see also Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, **422 F.3d 603, 607 (7th Cir. 2005).** The party seeking summary judgment bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett*, **477 U.S. 317, 323 (1986).**

After a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, **477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)(2)).** A genuine issue of material fact remains if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Bunn v. Khoury Enterpr. Inc.*, **753 F.3d 676, 682 (7th Cir. 2014)(quoting** *Anderson* **477 U.S. at 248).** In assessing a summary judgment motion, the district court views the facts in the light most

---

[1] The Court dismissed a claim under the Illinois Religious Freedom Restoration Act, 775 ILCS 35/1 *et seq*, an Eighth Amendment Claim that was duplicative of the First and Fourteenth Amendment claims, and a First Amendment retaliation claim based on incident involving the serving of non-Halal turkey chili. (Doc. 9, p. 5–9).

favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Anderson v. Donahoe*, **699 F.3d 989, 994 (7th Cir. 2012).** Even if the facts are not in dispute, summary judgment is inappropriate if alternate inferences can be drawn from the evidence. *Dowden v. Polymer Raymond, Inc.*, **966 F.2d 1206, 1207 (7th Cir. 1992).**

## RELIGIOUS LAND USE AND INSTITUTIONALIZED PERSONS ACT

The Religious Land Use and Institutionalized Persons Act (RLUIPA) prohibits prison officials from imposing a "substantial burden on the religious exercise of a person" unless the prison can demonstrate that the burden is "(1) in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." **42 U.S.C. § 2000cc-1(a)**. "'Religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." **42 U.S.C. § 2000cc-5(7)(A)**. The religious accommodation sought by an inmate "must be sincerely based on a religious belief and not some other motivation." *Holt v. Hobbs*, **135 S.Ct. 853, 862 (2015) (citing** *Burwell v. Hobby Lobby Stores, Inc.*, **134 S.Ct. 2751, 2774, n. 28 (2014))**. In addition to showing that the exercise sought is grounded in a sincerely held religious belief, a plaintiff also bears the burden of demonstrating that his exercise of religion has been substantially burdened. *Holt*, **135 S.Ct. at 862-63**. A substantial burden exists if a state action or prohibition "seriously violates" an inmate's religious beliefs. *Schlemm v. Wall*, **784 F.3d 362, 364 (7th Cir. 2015) (quoting** *Holt*, **135 S.Ct. at 862).** If a plaintiff meets his burden, the burden then shifts to the defendants to demonstrate both a compelling governmental interest and that the act

or prohibition in question was the least restrictive means of furthering that interest. *Holt*, **135 S.Ct. at 863**.

If an inmate shows that prison officials substantially burdened his free exercise of religion, his remedies are not without limits. Plaintiff's complaint was construed as suing the defendants in their official capacities only (*See* Doc. 9), and sovereign immunity shields a state official from being sued for money damages in his or her official capacity. *Maddox v. Love*, **655 F.3d 709, 717 (7th Cir. 2011)**; *Nelson v. Miller*, **570 F.3d 868, 884–85 (7th Cir. 2009)**. Injunctive relief may be available to Hines, however, against some of the defendants. Hines is currently incarcerated at Hill, but Defendants Sutton, Bryant, Harris, Snyder, and Reiman are employed at Pinckneyville. He has not alleged, and the record does not reflect, that the defendants who are employed at Pinckneyville have any ongoing role in his dietary accommodation concerns now that he is incarcerated elsewhere. Hines cannot establish that these defendants pose a risk of an ongoing or threatened violation of his rights, so injunctive relief based on RLUIPA claim is not available to him. Without a potential remedy, Hines's RLUIPA claim against Defendants Sutton, Bryant, Harris, Snyder, and Reiman cannot proceed.

Hines's claims against Defendants IDOC and Godinez are not so easily disposed. As a preliminary matter, Defendants seemingly concede that Hines's religious beliefs regarding Halal dietary rules are sincerely held. They also make no argument about whether any substantial burden Hines might demonstrate serves a compelling state interest and is implemented by the least restrictive means. The issue they put before the

Court at this stage solely is whether Hines's exercise of his religious beliefs has been substantially burdened.

Defendants argue that Hines has not demonstrated that his religious exercise has been substantially burdened, noting, for example, that Hines is currently on the regular diet at Hill and that there is no evidence that he has requested a religious dietary accommodation at Hill. Hines alleges that he is not on the special diet because of the side effects and medical issues he endured from the large amounts of soy in the lacto-ovo diet, including two overnight stays in the Pinckneyville health care unit and weight loss while on the diet. (Doc. 55 at 6). Defendants' argument is not persuasive on this point. That he is not on the lacto-ovo diet at Hill because of the health issues he had with the diet is at the crux of Hines's complaint and goes directly towards the relief he now seeks: a Halal diet that includes Halal meat, or at the very least access to Halal meat, rather than a diet with soy-based protein substitutes for meat.

Defendants claim that they provided Plaintiff with a diet consistent with his religious beliefs by placing him on the lacto-ovo diet because Plaintiff's religious beliefs do not require him to eat meat and also because Halal items are available to Plaintiff through the commissary. Hines, though he testified in his deposition that he was not sure if his religion required him to eat meat, argues in his response, citing religious verses and teachings that he believes apply, that he does believe that he is required to eat Halal meat as a Muslim. He does not believe that a meat-free diet satisfies his religious dietary requirements. Even if Defendants disagree that Hines must eat Halal meat as

part of his diet, it is his sincerely held beliefs on the issue that control. *See* **42 U.S.C. § 2002cc-5(7)(A)(defining "religious exercise" as including "any exercise of religion, whether or not compelled by, or central to, a system of religious belief"); see also** *Holt v. Hobbs*, **135 S.Ct. 853, 862-63 (protection under RLUIPA "is not limited to beliefs which are shared by all of the members of a religious sect").**

Hines claims that Halal meat is not sold in the Hill commissary, so he is unable to satisfy the requirement of eating Halal meat by purchasing it for himself at the commissary. If he is without plausible options for a Halal diet that includes Halal meat at Hill, which he sincerely believes is central to the exercise of his religion, then a reasonable juror could find that his inability to obtain Halal meat substantially burdens his sincerely held religious beliefs. Summary judgment on the issue of a substantial burden is not appropriate. The facts viewed in a light most favorable to Hines indicate that he has a sincerely held religious belief that he must eat Halal meat and that he does not have access to Halal to consume as part of his diet. *See Muhammad v. Wheeler*, **171 F.Supp.3d 848, 849-50 (E.D. Ark. 2016) (district court refused to find as a matter of law that prison meal policy did not substantially burden plaintiff's religious beliefs where inmate believed he was required to eat Halal meat, not just a Halal diet, and a factual issue existed as to whether he could obtain Halal meat from the prison's commissary);** *cf. Robinson v. Jackson*, **615 Fed.Appx. 310, 313 (6th Cir. 2015) (Defendants asserted, and inmate conceded, that vegetarian meals provided to inmate met inmate's definition of Halal);** *Perez v. Frank*, **2008 WL 859716, at \*5 (E.D. Wis.**

**March 28, 2008)(Muslim inmate agreed that vegetarian diet comported with his religious beliefs);** *Taylor v. Cook Co.* **2013 WL 2285806, at \*7 (N.D. Il May 23, 2013) (inmate conceded he did not believe his religion required him to eat meat).**

In addition to the issue of Hines's access to Halal meat, summary judgment is inappropriate at this stage because a reasonable juror could find that Hines's religious exercise is substantially burdened because he is forced to choose between his ability to exercise his religious beliefs and adequate nutrition. *Nelson***, 570 F.3d at 879(Catholic inmate who was denied a meatless diet during Lent and resorted to eating around meat in the regular diet, leading to weight loss and hospitalization, was substantially burdened by having to choose between exercising his religious beliefs and adequate nutrition)**; *see also Hunafa v. Murphy***, 907 F.2d 46 (7th Cir. 1990)**. Here, a reasonable juror could also find that Plaintiff Hines is being forced to choose between the ability to practice his Muslim faith and adequate nutrition. Hines alleges that he lost weight and went to the healthcare unit multiple times, including overnight stays, due to consuming the lacto-ovo diet. He blames these negative health effects on the amount of soy in the lacto-ovo diet. Meanwhile, Defendants argue that the lacto-ovo diet is formulated to provide a similar caloric intake as the general diet. (Doc. 43-4). They have not addressed directly the alleged health issues specific to Hines, and they fail to meet their summary judgment burden on this point. As such, the Court finds that a reasonable juror could conclude that Plaintiff is currently being forced to choose between adequate nutrition and the ability to exercise his religion.

Genuine issues of material fact exist as to whether Plaintiff's exercise of religion has been substantially burdened under RLUIPA, and Defendants did not raise any arguments regarding the second portion of the RLUIPA burden-shifting analysis. As a result, the Court is left to find that a reasonable juror could find that Hines's exercise of religion has been significantly burdened and that Defendants have not met their burden to demonstrate that their actions regarding Plaintiff's diet are the least restrictive means in furtherance of a compelling governmental interest. Summary judgment is not appropriate on Hines's RLUPIA claim. As discussed above, however, because only injunctive relief is available to Hines under RLUIPA, summary judgment is **GRANTED** as to Defendants Sutton, Bryant, Harris, Snyder, and Reiman but is **DENIED** as to Defendants Godinez and IDOC.

## EQUAL PROTECTION

The Fourteenth Amendment to the United States Constitution states in relevant part that "[n]o state shall…deny to any person within its jurisdiction the equal protection of the laws." **U.S. CONST. amend. XIV, § 1.** The Equal Protection Clause protects against disparate treatment based upon a person's status in a protected class. *Greer v. Amesqua,* **212 F.3d 358, 370 (7th Cir. 2000)**. Generally, to prevail on a claim for an Equal Protection violation, a prisoner must demonstrate that he is a member of a protected class and that state actors treated members of the prisoner's class less favorably than similarly situated people who are not members of the class. *See Brown v. Budz,* **398 F.3d 904, 916 (7th Cir. 2005);** *Harris v. Greer,* **750 F.2d 617, 618–19 (7th Cir. 1984)**. At the same time, "isolated

events that adversely affect individuals are not presumed to be a violation of the equal protection clause." *Shango v. Jurich*, **681 F.2d 1091, 1104 (7th Cir. 1982).** Such events "[a]t most . . . demonstrate[] 'a mere inconsistency in prison management . . . which . . . may not in itself constitute a cognizable equal protection claim.'" *Id.* **(quoting** *Durso v. Rowe*, **579 F.2d 1365, 1372 (7th Cir. 1978))**. Moreover, to demonstrate an Equal Protection violation, a plaintiff must set forth evidence of "intentional or purposeful discrimination" on the part of defendants. *Bloomenthal v. Lavelle*, **614 F.2d 1139, 1141 (7th Cir. 1980)**.

Defendants argue that Hines cannot recover on his Equal Protection claim as matter of law because there is no evidence of intentional discrimination against him. In response, Hines argues that Jewish inmates are provided with Kosher meals but Muslim inmates are not provided with Halal ones. Nonetheless, the Court finds there is no evidence of intentional or purposeful discrimination against Hines, and his Equal Protection claim fails as a matter of law.

In the case at bar, regardless of the merits of Plaintiff's assertions relating to Kosher meals being provided to Jewish inmates, there is no evidence in the record that the failure to provide a Halal meal or Halal meat is due to discrimination based on Plaintiff's faith. The Pinckneyville Food Services Manager testified that the lacto-ovo diet is a special diet approved for Muslim inmates. Plaintiff disputes this fact by asserting that while the lacto-ovo diet is "approved for Muslims by the Courts and enforced by the Department of Corrections in Illinois… it is not derived from nor has its origins in the

rulings of Islam." (Doc. 55, p. 4-5). It is clear, however, that what Hines disputes is not whether IDOC/Pinckneyville have approved the lacto-ovo diet for Muslims, but, rather, whether the lacto-ovo diet itself conforms with his personal beliefs. The distinction is important. Contrary to demonstrating intentional or purposeful discrimination, that IDOC and/or Pinckneyville have approved the lacto-ovo diet for Muslim inmates demonstrates an attempt to accommodate Muslim inmates' religious beliefs rather than the intent to discriminate based on those beliefs.

Dietary accommodations were made for Plaintiff specifically, as is demonstrated in the IDOC memo showing that Plaintiff applied, and was approved, for an lacto-ovo diet on the basis of his Muslim faith. That Hines now asserts that the lacto-ovo diet does not comport with his religious views does not negate that the diet was provided to Plaintiff, after his own application, as an accommodation for his religious beliefs. In other words, that Hines now claims the diet is not in line with his Muslim faith does not itself demonstrate intentional or purposeful discrimination against him on the part of any defendants. Rather, the undisputed facts demonstrate an attempt to accommodate Plaintiff's religious beliefs. Regardless of the merits of Plaintiff's claim that Jewish inmates are provided Kosher food while Muslim inmates are not provided Halal meat, the lack of any evidence in this case demonstrating intentional or purposeful discrimination against Plaintiff causes his Equal Protection claim to fail as a matter of law. *See Hearn v. Kennell*, **433 Fed.Appx. 483 (7th Cir. 2011)(affirming district court's grant of summary judgment on an Equal Protection claim challenging the availability**

of Kosher-certified meat to Jewish inmates while Halal meat was not provided for Muslim plaintiff). As such, the Defendants' motion for summary judgment is GRANTED as to Plaintiff's Equal Protection claim.

### EIGHTH AMENDMENT

The Eighth Amendment prohibits "cruel and unusual punishments." **U.S. CONST. amend. VIII**. A condition of confinement may constitute cruel and unusual punishment, if the condition results in "unquestioned and serious deprivation[s] of basic human needs," or if it "deprive[s] inmates of the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, **452 U.S. 337, 347 (1981)**. The Eighth Amendment does not require the most humane or efficacious prison administration. *Oliver v. Deen*, **77 F.3d 156, 161 (7th Cir. 1996)**. Prisons are not required to provide inmates with healthier food than that enjoyed by substantial numbers of free Americans. *Carroll v. DeTella*, **255 F.3d 470, 471 (7th Cir. 2001)**. In fact, prison conditions can be "restrictive" and "harsh" without violating the Eighth Amendment. *Rhodes*, **452 U.S. at 347**. The Supreme Court has noted that "such conditions…are part of the penalty that criminal offenders pay for their offenses against society." *Id.*

To prove a claim brought under the Eighth Amendment requires a two-part showing. First, the inmate must demonstrate he was subject to a deprivation that was objectively, sufficiently serious so that an official's act or omission resulted in the denial of the minimal civilized nature of life's necessities. *Townsend v. Fuchs*, **522 F.3d 765, 773 (7th Cir. 2008)**. Second, the prison official must be "deliberately indifferent" to a serious

risk of harm to the inmate. *Mays v. Springborn,* **575 F.3d 643, 648 (7th Cir. 2009)**. "Deliberate indifference" constitutes a state of mind more blameworthy than mere negligence. *Farmer v. Brennan***, 511 U.S. 825, 834, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994)**. The test for deliberate indifference is a subjective one, where, to be held liable, a prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* **at 837**. In other words, to be deliberately indifferent, a prison official must have actual knowledge of the substantial risk of serious harm. It is not enough that the official should have drawn the inference of the risk but failed to do so. *Id.* **at 838**.

Plaintiff argues his Eighth Amendment rights were violated because he suffered weight loss due to a soy allergy triggered by the soy products in the lacto-ovo diet, which, in turn, caused harm to his abdomen. As suggested under the Court's RLUIPA analysis, a reasonable juror could find that Plaintiff's health ailments and weight loss were a result of consuming the lacto-ovo diet. Viewing the record in Plaintiff's favor, the health issues alleged by Plaintiff would constitute a serious harm. The question then is which Defendants, if any, were deliberately indifferent to such harm. Defendants argue there is no evidence that any of the Defendants knew of any of Plaintiff's health issues, and that there is no evidence that any of the Defendants knew of any potential risk of harm to Plaintiff's health caused by the lacto-ovo diet.

It is certainly true that none of the Defendants knew of the risk of harm to Plaintiff when he requested the religious diet in February 2011. The grievances filed by Hines,

however, indicate that Defendant Bryant and, possibly, Reiman were aware of Plaintiff's alleged health issues at least sometime after July 19, 2013. Defendant Bryant was asked to respond to the February 2013 grievances, where Hines raised his health issues, creating a factual issue as to whether Bryant knew about them. Additionally, the fact that Defendant Bryant, in her response to the grievance, indicates she discussed some of Plaintiff's concerns with Defendant Reiman, also raises a factual issue as to whether Defendant Reiman knew of Plaintiff's health problems.

If these Defendants did know of Plaintiff's alleged health issues, which he claimed were a result of his lacto-ovo diet, then a reasonable juror could find that they had knowledge of a substantial risk of harm to Hines. Since Defendant Bryant did nothing in regards to his diet, in light of her knowledge, a reasonable juror could also find she was deliberately indifferent to a substantial risk of harm to Hines. Summary judgment is not appropriate as to her. As a food services supervisor under Bryant, however, Defendant Reiman had no authority to change Plaintiff's diet, regardless of any knowledge of his health issues. Accordingly, Defendant Reiman is entitled to summary judgment on Plaintiff's Eighth Amendment claim.

There is no evidence in the record to demonstrate that any of the remaining Defendants had actual knowledge (or any knowledge) of such a risk.[2]   As such, the

---

[2] While Defendant Godinez's name appears on a response to Plaintiff's grievances, (Doc. 1, p. 35), he is not liable simply because he was the Director of IDOC. *Respondeat superior* does not apply to § 1983 claims, so a defendant is only liable if he was "personally responsible for the deprivation of a constitutional right." *Chavez v. Ill. State Police,* **251 F.3d 612, 651 (7th Cir. 2001)(quotation omitted).** A supervisor is only held liable for his own actions and knowledge, not for the knowledge or actions of those they supervise. *See Vinning-El v. Evans,* **657 F.3d 591, 592 (7th Cir. 2011);** *Burks v. Raemisch,* **555 F.3d 592, 594 (7th Cir. 2009).**

Defendants' motion is **DENIED** as to Defendant Bryant and **GRANTED** as to the remaining defendants.

**FIRST AMENDMENT**

The First Amendment to the United States Constitution provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." **U.S. CONST. amend. I**. The amendment has been incorporated to the states through the Fourteenth Amendment Due Process Clause. *Cantwell v. Connecticut*, **310 U.S. 296, 303–04 (1940)**. The Constitution's religious protections extend to incarcerated inmates; however, their rights are not absolute. *Ortiz v. Downey*, **561 F.3d 664, 669 (7th Cir. 2009)**.

**1. Free Exercise**

In order to prevail on a claim under the Free Exercise Clause of the First Amendment, a plaintiff must demonstrate that his right to practice his chosen religion was "burdened in a significant way." *Kaufman v. McCaughtry*, **419 F.3d 678, 683 (7th Cir. 2005)**. Unlike RLUIPA, however, a prison practice or policy will not violate the First Amendment if it is one of neutral and general applicability that has the incidental effect of burdening a religious practice or where the policy or regulation was reasonably related to a legitimate penological objective. *See Koger v. Bryan*, **523 F.3d 789, 796-97 (7th Cir. 2008);** *Maddox v. Love*, **655 F.3d 709, 719 (7th Cir. 2011)**; s*ee also Mark v. Gustafson*, **286 Fed.Appx. 309, 312 (7th Cir. 2008).**

The Court divides its Free Exercise analysis into two parts: (1) whether Plaintiff's

right to practice his religion was burdened by alleged health issues stemming from the lacto-ovo diet; and (2) aside from the health issues, whether the mere fact that Plaintiff is not provided a special Halal diet in itself significantly burdens his religion. First, for the reasons indicated in its RLUIPA analysis, the Court finds that a reasonable juror could find that Plaintiff's religious practice was significantly burdened due to a forced choice of having to choose between practicing his religion and having adequate nutrition. *See Nelson*, 570 F.3d at 876 (**"Section 1983, First Amendment, RLUIPA, and IRFRA claims all use the substantial burden test to determine whether a violation of a plaintiff's religious free exercise rights has occurred."**) For the reasons indicated in the Eighth Amendment analysis above, the facts demonstrate that only Defendants Bryant and Reiman had knowledge of Plaintiff's alleged health issues and that only Defendant Bryant was in a position to do something about it. Summary judgment for Plaintiff's Free Exercise claim is not appropriate as to Defendant Bryant.

The Court turns next to the issue of whether the mere fact that Hines is not provided a special Halal diet, health issues aside, significantly burdens his religion. While Plaintiff can only obtain injunctive relief under RLUIPA, he may obtain money damages for violations of his First Amendment rights through § 1983. However, since Defendants are subject to money damages for a First Amendment violation, they are also shielded by the doctrine of qualified immunity. Without addressing this constitutional issue on its merits, the Court finds that the remainder of Plaintiff's Free Exercise claims are disposed of on qualified immunity grounds regardless of whether Plaintiff's

constitutional rights were violated. Therefore, a decision on the merits of the constitutional issue is unnecessary. ***See Pearson v. Callahan*, 555 U.S. 223, 239 (2009) ("[T]here will be cases in which a court will rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question whether the relevant facts make out a constitutional question at all….[T]he judges of the district courts and courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.")**

Qualified immunity shields prison officials from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Mullenix v. Luna*, 136 S.Ct. 305, 308 (2015).** In order for a defendant not to be shielded by qualified immunity, there must be a clearly established right based on existing precedent placing the statutory or constitutional question "beyond debate." ***Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011))**. Qualified immunity protects all but the "plainly incompetent or those who knowingly violate the law." ***Mullenix*, 136 S.Ct. at 308 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)**. The key question for a court to ask is whether the state of the law at the time of the alleged violation gave an official a "fair warning" that his or her action was unconstitutional. *Hope v. Pelzer,* **536 U.S. 730, 741 (2002)**.

In the case at bar, it is important to note that Defendants were not put on notice of Plaintiff's belief that he was required to eat meat as part of his faith until he responded to

their motion for summary judgment. As a result, the question for the Court to consider is whether the state of the law between Fall 2011 and February 2013 provided Defendants with fair warning that failing to provide Plaintiff with a specifically Halal-designated meal, instead providing him a vegetarian diet with soy products substituted for meat, violated Plaintiff's First Amendment rights. The fact that Plaintiff now asserts that he believes he is required to eat meat does not factor into the Court's qualified immunity calculus. The issue is whether the law clearly established that Hines, as a Muslim inmate, is entitled to a Halal-designated meal rather than a vegetarian diet that officials deemed consistent with the dietary requirements of Hines's faith. Assuming *arguendo* that their actions violated Plaintiff's First Amendment rights, the Defendants would be protected by qualified immunity because the law does not clearly establish such a right.

Neither the Supreme Court nor the Seventh Circuit appears to have directly addressed the issue in this case. The closest the Seventh Circuit appears to have come is in *Hunafa v. Murphy*, **907 F.2d 46, (7th Cir. 1990)**. In *Hunafa* the Seventh Circuit reversed a grant of summary judgment to the prison official defendants. **907 F.2d at 49**. In *Hunafa*, health issues aside, the Muslim plaintiff was served pork two to three days a week while in disciplinary segregation. *Id.* **at 46–47**. Special meals were not provided to Muslim inmates while they were in segregation, but, when pork was served, a non-pork substitute consisting of soup and bread was served alongside the pork. *Id.* **at 47**. The two food items were served on the same tray, and Defendants conceded that there was no guarantee that some of the food would not run together, which caused concern. *Id.* In

Hines's case, however, with the lacto-ovo diet, he received meals entirely free of pork and other prohibited meats. The relevant district court rulings in this circuit have largely been in favor of the prison officials providing alternative diets, not specifically Halal meat, to inmates. **_See Hearn v. Kennell_, No. 07-1235, 2009 WL 3460455, at \*5 (7th Cir. Oct. 29, 2009) (where plaintiff was "given multiple alternatives and was not forced to consume any foods that he believed were in violation of his faith", there was no substantial burden to plaintiff's religion in failure to provide a Halal diet); _Ware v. Garnett_, No. 04-CV-925-WDS, 2008 WL 895670, at \*2 (S.D. Il Mar. 31, 2008) (finding that the "availability of a vegetarian meal [as opposed to a specifically Halal meal] is sufficient to meet religious needs, and did not violate plaintiff's First Amendment rights"); _Perez v. Frank_, No. 04-C-1062, 2008 WL 859716, at \*5 - \*6 (E.D. Wis. March 28, 2008) (no substantial burden to Muslim inmate's religious exercise where prison denied Halal diet and where vegetarian options were available to inmate).**

Even if the Defendants substantially burdened Plaintiff's First Amendment rights, the state of the law between Fall 2011 and February 2013 did not provide Defendants with fair warning that providing Hines with the lacto-ovo diet that substituted soy-based proteins for meat but failing to provide Plaintiff with a specifically Halal-designated meal violated his rights. Therefore, the remaining Defendants are entitled to qualified immunity as to Plaintiff's Free Exercise claims, regardless of the merits of those claims. As such, the motion for summary judgment is **GRANTED** as to Plaintiff's Free Exercise claims for all Defendants except Defendant Bryant and **DENIED**

as to Defendant Bryant.

### 2. Establishment Clause

In regards to the Establishment Clause of the First Amendment, a prison's policy or practice violates that clause if (1) it has no secular purpose, (2) its primary effect advances or inhibits religion, or (3) it fosters an excessive entanglement with religion. *Kaufman*, **419 F.3d at 683**.   Here Defendants have raised no argument regarding Plaintiff's Establishment Clause claim, and, therefore, have failed to meet their burden of demonstrating why summary judgment should be granted as to the merits of this claim. *See Celotex*, **477 U.S. at 323 ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.")**. Despite the failure to put forth an argument, the Defendants are entitled to qualified immunity. When providing a diet approved for Muslim inmates, the lacto-ovo diet, there is no violation of a clearly established right in this circuit in failing to provide a special Halal diet for Plaintiff, even if Kosher diets were provided for Jewish inmates.

The Seventh Circuit addressed a similar Establishment Clause issue in *Nelson v. Miller*, where the chaplain required Nelson to provide written verification that his requested diet was required by his Catholic faith, while not requiring such verification for Muslims and African Hebrew Israelites. *Nelson*, **570 F.3d at 880–81**. The Seventh Circuit accepted the district court's reasoning that the chaplain did not ask for written verification from the other religions because he was already familiar that a limited diet was a tenant of those religions. *Id.* **at 881**. The court found there to be no evidence of a

desire by the chaplain to advance Islam or the African Hebrew Israelite religion over Catholicism. *Id.* In the case at bar, as already discussed as part of the Court's Equal Protection analysis, there is no evidence that Defendants intentionally discriminated against Plaintiff or his faith. Lack of such evidence also indicates a lack of evidence on the part of Defendants that they attempted to advance other religions over Plaintiff's faith. Even though Defendants did not raise an Establishment Clause argument as part of their motion, they are shielded by qualified immunity and are entitled to summary judgment. Defendants' motion for summary judgment is **GRANTED** as to Plaintiff's Establishment Clause claim.

CONCLUSION

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' motion for summary judgment (Doc. 42). At the close of the case, the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants Sutton, Harris, Snyder, and Reiman and against Plaintiff on **all claims**. The Clerk is also **DIRECTED** to enter judgment in favor of Defendant Bryant and against Plaintiff on his RLUIPA, Equal Protection, and Establishment Clause claims at that time. Further, the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendants IDOC and Godinez and against Plaintiff on all claims except for the RLUIPA claim at the close of the case.

Only the following claims shall go forward against the following defendants:

- **RLUIPA claim against Defendants IDOC and Godinez;**[3]

- **Eighth Amendment claim against Defendant Bryant; and**

- **First Amendment Free Exercise claim against Defendant Bryant.**

**IT IS SO ORDERED**.
DATED: January 31, 2017

*s/ Michael J. Reagan*
MICHAEL J. REAGAN
**Chief Judge**
**United States District Court**

---

[3] The Court is aware that Mr. Godinez is no longer the Director of the IDOC. The Attorney General is directed to file a motion to substitute the current director as a defendant in his official capacity in place of Mr. Godinez.